UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

                      Plaintiff,

     -against-

KRCM ASTORIA PORTFOLIO
CORPORATION, RAJMATTIE
PERSAUD, et al.,

                      Defendants.
----------------------------------------------------------X

**MEMORANDUM
AND ORDER**
25-CV-1401 (NGG) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

    Plaintiff Federal National Mortgage Association ("Plaintiff" or "Fannie Mae") commenced this action on March 12, 2025, seeking foreclosure of three multi-family residential buildings located at 23-05 30th Avenue, Astoria, New York 11102, 23-15 30th Avenue, Astoria, New York 11102, and 21-80 38th Street, Astoria, New York 11105 (collectively, the "Property"). (*See generally* Compl., ECF No. 1.)

    Plaintiff now moves, pursuant to Rule 66 of the Federal Rules of Civil Procedure, to appoint Trigild IVL ("Trigild") as receiver to secure and oversee the maintenance of the Property until a foreclosure sale takes place. (Mot. to Appoint a Receiver, ECF No. 21; Pl.'s Mem. in Supp. of Mot. for Appointment of a Receiver ("Pl.'s Mem."), ECF No. 21-2, at 1.) Defendants KRCM Astoria Portfolio Corporation (the "Borrower") and

Rajmattie Persaud (collectively, "Defendants") oppose the motion.[1] (*See* Mem. in Opp'n to Mot. to Appoint Receiver ("Opp'n"), ECF No. 22.) The Honorable Nicholas G. Garaufis referred the motion to the undersigned Magistrate Judge. For the reasons that follow, Plaintiff's motion to appoint Trigild as receiver is granted.[2]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Factual Background

As set forth in the complaint, on or about April 4, 2017, the Borrower borrowed $34,700,000.00 plus interest from its original lender; this transaction was memorialized in an executed amended and restated multifamily note (the "Note"). (Compl., ECF No. 1, ¶ 21.) That same day, the Borrower and the lender entered into three additional agreements: (1) a multifamily loan and security agreement (the "Loan Agreement"), which required the Borrower to make monthly loan payments to the lender on the first day of each month from June 1, 2017, through May 1, 2024 (the "Monthly Payments"); (2) an extension and modification agreement (the "Modification Agreement"), which

---

[1] Plaintiff also named numerous nominal and fictitious defendants, including the New York City Environmental Control Board ("ECB"), the New York City Department of Housing Preservation & Development ("HPD"), Approved Oil Co. of Brooklyn, Inc., and John Doe #1 Through John Doe #119, who are "unknown persons or entities joined as party defendants because they may be tenants and persons in possession of the Property or have some interest in and to the Property (including that of judgment creditors) inferior and subordinate to that of Plaintiff or may be persons who hold or have collected the rents, issues and profits relating to or arising from the Property." (Compl., ECF No. 1, ¶¶ 6–9.) These Defendants have not filed any opposition to or acknowledgment of Plaintiff's motion to appoint receiver. The Clerk of Court has entered default against Defendants Approved Oil Co. of Brooklyn, Inc., HPD, and ECB. (Clerk's Entry of Default, ECF No. 35.)

[2] A magistrate judge's grant of a motion to appoint a receiver is considered non-dispositive. *See, e.g.*, *U.S. Bank Nat'l Ass'n as Trustee for the Registered Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp. Multifamily Mortg. Pass-Through Certificates, Series 2019-SB58 v. Mazel on Del LLC*, No. 22-CV-602V(F), 2023 WL 2501046, at *2 n.4 (W.D.N.Y. Mar. 14, 2023) (citing *Cadena v. A-E. Cont., LLC*, No. 3:08-CV-574 (WWE), 2013 WL 6178515, at *2 (D. Conn. Nov. 22, 2013) and *Fleet Dev. Ventures, LLC v. Brisker*, No. 3:06-CV-570 (RNC), 2006 WL 2772686, at *13–14 (D. Conn. Sept. 12, 2006)).

2

consolidated eight pre-existing mortgages into a single mortgage; and (3) a multifamily mortgage, assignment of leases and rents, security agreement and fixture filing (the "Mortgage Agreement"). (*Id.* ¶¶ 22–23.) The original lender then assigned to Plaintiff the Note, Loan Agreement, Modification Agreement, and Mortgage Agreement (collectively, the "Loan Documents"). (*Id.* ¶¶ 34–36; Pl.'s Mem., ECF No. 21-2, at 3.) The Loan Documents provided that the Borrower was entrusted to collect and receive rent from the Property's tenants and to use the rent payments for the management and maintenance of the Property. (Pl.'s Mem., ECF No. 21-2, at 3.)

Section 14.01(a)(1) of the Loan Agreement states that any failure by the Borrower to pay or deposit when due any amount required by the Loan Documents, including a "failure to pay the principal sum and all accrued but unpaid interest due and payable on the Maturity Date," constitutes an automatic "Event of Default." (Compl., ECF No. 1, ¶ 37.) Plaintiff alleges that, from April 1, 2020, to May 31, 2022, the Borrower failed to make the Monthly Payments due as required under the Loan Documents. (*Id.* ¶ 45; *see also* Pl.'s Mem., ECF No. 21-2, at 4.) During this time, the Borrower and Plaintiff, acting through the original lender, entered into seven forbearance agreements, under which Plaintiff "agreed to refrain from exercising its rights and remedies under the Loan Documents in exchange for the Borrower's acknowledgment of its default, waiver of claims and defenses, and acceptance of specific conditions set forth in the agreements." (Compl., ECF No. 1, ¶ 46.) Plaintiff represents that these prior forbearance agreements expressly provided that they did not modify the maturity date of the loan, which was May 1, 2024 (the "Maturity Date"), and all outstanding amounts under the Loan Documents remained due and payable on that date. (Trent Decl. in Supp. of Pl.'s Mem. ("Trent Decl."), ECF No. 21-3, ¶ 18; Pl.'s Mem., ECF No. 21-2, at 5.)

3

Plaintiff alleges that on May 1, 2024, the Maturity Date, the Borrower failed to pay all amounts due and owing under the Loan Documents, and this failure constituted an Event of Default, "entitling Plaintiff to exercise all its rights and remedies under the Loan Documents." (Compl., ECF No. 1, ¶ 52; Pl.'s Mem., ECF No. 21-2, at 5.)

On or about May 21, 2024, Plaintiff sent a letter to the Borrower notifying the Borrower that it was in default of its obligations under the Loan Documents in light of its failure to pay the outstanding amounts due on the Maturity Date (the "Demand Letter"), and informing the Borrower that, because of the defaults, Plaintiff may exercise any all rights and remedies enumerated in the Loan Documents. (Compl., ECF No. 1, ¶¶ 53–54.)

On May 23, 2024, the parties executed a pre-negotiation letter ("PNL") in which the Borrower acknowledged that "the Loan is in default." (*Id.* ¶¶ 56–57; Pre-Negotiation Letter, ECF No. 21-10, at ECF pp. 5–6.) On July 19, 2024, the parties executed a forbearance agreement and acknowledgement of default (the "Eighth Forbearance Agreement"), under which Plaintiff agreed to forbear from exercising its rights and remedies under the Loan Documents until October 31, 2024, and the Borrower agreed to repay the Loan, including payment of all amounts due under the Loan Documents, by October 31, 2024. (Compl., ECF No. 1, ¶ 58.) After the Borrower failed to make payment of all amounts due by the October 31, 2024 deadline, the parties executed a first amended forbearance agreement and acknowledgement of default (the "Final Forbearance Agreement"), in which Plaintiff agreed to refrain from exercising its rights and remedies under the Loan Documents through February 1, 2025. (*Id.* ¶¶ 59–60.) In return, the Borrower agreed to, among other things, repay the Loan in full by February 1, 2025, including all amounts due under the Loan Documents and attorneys' fees, expenses, and default interest. (*Id.* ¶ 61.) Plaintiff alleges that the Borrower "waive[d]

4

any and all defenses, including affirmative defenses, and counterclaims that they could conceivably assert in connection with any foreclosure or receivership action" in both the Eighth Forbearance Agreement and the Final Forbearance Agreement. (*Id.* ¶ 62 (alteration in original) (quotation marks omitted).) Plaintiff further alleges that, in the Final Forbearance Agreement, the Borrower agreed that, in the event of default, the Borrower "agree[d] to consent to and not oppose or interfere with the foreclosure of the property, including any motion to appoint a receiver." (*Id.* ¶ 64 (alteration in original) (quotation marks omitted).) Plaintiff alleges that the Borrower has committed multiple defaults under the Final Forbearance Agreement, including failing to repay the Loan in full by February 1, 2025. (*Id.* ¶¶ 65–70.)

Plaintiff now seeks to exercise the receivership provision of the Mortgage Agreement, which provides that Borrower "expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte*, if permitted by applicable law," if an Event of Default "has occurred and is continuing." (Mortgage Agreement, ECF No. 21-7, at ECF pp. 24–25; Trent Decl., ECF No. 21-3, ¶ 38.)

## II. Procedural History

Plaintiff filed its complaint on March 12, 2025. (Compl., ECF No. 1.) Defendants filed an answer on May 1, 2025. (Answer, ECF No. 15.) On May 6, 2025, the parties filed a letter proposing a briefing schedule for Plaintiff's anticipated motion for the appointment of a receiver. (Letter, ECF No. 17.) Judge Garaufis ordered the parties' proposed briefing schedule on May 12, 2025. (Order, ECF No. 18.)

On June 20, 2025, the parties filed the fully briefed motion to appoint a receiver. (*See* Mot. to Appoint a Receiver, ECF No. 21; Pl.'s Mem., ECF No. 21-2; Opp'n, ECF No. 22; Reply, ECF No. 23.) On June 24, 2025, Defendants requested oral argument on the motion; that same day, Plaintiff filed a letter representing that oral argument was not

5

necessary. (Letter, ECF No. 26; Letter, ECF No. 27.) Judge Garaufis referred the motion to the undersigned Magistrate Judge on June 25, 2025. (June 25, 2025 ECF Order Referring Mot.)

On June 27, 2025, the parties filed a joint letter, representing that the parties were engaging in settlement discussions and had agreed to pause litigation through July 31, 2025, to allow Borrower time to pay off the mortgage loan. (Joint Letter, ECF No. 28.) The parties also requested that the Court defer ruling on the pending motion to appoint a receiver until August 1, 2025. (*Id.*) At the initial conference held on June 30, 2025, the parties requested a brief stay and reiterated their request that the Court defer ruling on the receiver motion. (June 30, 2025 ECF Min. Entry & Order.) The Court granted the parties' request and directed the parties to file a joint status report by August 1, 2025, with an update "as to the status of the loan and the case, an update on discovery, whether the Court should adjudicate the motion to appoint receiver, and any additional proposed next steps." (*Id.*)

On August 1, 2025, the parties filed a joint status report, representing that the loan remains unpaid, "as Borrower has been unable to close with a new lender." (Status Report, ECF No. 31, at 1.) The parties stated that "the Court should proceed to adjudicate the pending motion to appoint a receiver," that Plaintiff intends to move for summary judgment, and that Defendants have agreed that the matter can proceed to the summary judgment stage. (*Id.* at 2.) The Court acknowledged receipt of the parties'

status report on August 4, 2025, and noted that "the request to consider the motion to appoint a receiver is granted."[3] (Aug. 4, 2025 ECF Order.)

## DISCUSSION

### I. Standard for Appointment of Receiver

"[R]eceivership is 'traditionally used to protect the value of an asset that is the subject of litigation.'" *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 255 (S.D.N.Y. 2012) (quoting *United States v. Ianniello*, 824 F.2d 203, 205 (2d Cir. 1987)). Appointing a receiver constitutes an "'extraordinary remedy and . . . should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property.'" *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997) (quoting *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) (quotation marks omitted)). Rule 66 of the Federal Rules of Civil Procedure "govern[s] an action in which the appointment of a receiver is sought." Fed. R. Civ. P. 66; *see also Greystone Bank v. Tavarez*, No. 09-CV-5192 (SLT) (JMA), 2010 WL 11651639, at *1 (E.D.N.Y. Apr. 26, 2010) (collecting cases discussing how federal law applies to receivership inquiries).

"[T]he existence of a provision authorizing the application for a receiver in the event of a default, 'strongly supports the appointment of a receiver' when there is a default." *Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 250 (quoting *Nyland (CF8) Ltd.*, 839 F.2d at 97); *see D.B. Zwirn Special Opportunities Fund v. Tama Broad., Inc.*, 550 F. Supp. 2d 481, 490–91 (S.D.N.Y. 2008). When there is such a provision, "and the mortgagee has

---

[3] That same day, Plaintiff filed a letter requesting a pre-motion conference on Plaintiff's anticipated motion for summary judgment. (Letter Mot. for Pre-Mot. Conference, ECF No. 32.) A pre-motion conference on the anticipated motion was scheduled for September 10, 2025. (Sept. 2, 2025 ECF Scheduling Order.) At the conference, Judge Garaufis directed a combined briefing schedule for Plaintiff's motion for summary judgment and motion for default judgment. (Sept. 10, 2025 ECF Min. Entry.)

7

consented to such appointment and repeatedly defaulted on conditions of the mortgage, the mortgagee 'bears the burden of demonstrating why a receiver should not be appointed.'" *Fed. Nat'l Mortg. Ass'n v. 204 Ellery St., LLC*, No. 23-CV-5343 (ENV) (RML), 2024 WL 2939179, at *3 (E.D.N.Y. Apr. 23, 2024) (quoting *D.B. Zwirn Special Opportunities Fund*, 550 F. Supp. 2d at 491), *report and recommendation adopted*, 2024 WL 3716031 (E.D.N.Y. Aug. 8, 2024). However, contractual provisions providing for receivership, while informative, are not dispositive, see *D.B. Zwirn Special Opportunities Fund*, 550 F. Supp. 2d at 491, and the appointment of a receiver falls under the "discretion of the district court," *Miss Jones LLC v. Stiles*, No. 17-CV-1450 (NSR), 2019 WL 3034906, at *2 (S.D.N.Y. July 10, 2019).

Courts look to the following equitable considerations when determining whether to appoint a receiver:

> "[1] Fraudulent conduct on the part of defendant; [2] the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; [3] the inadequacy of the available legal remedies; [4] the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, [5] plaintiff's probable success in the action and [6] the possibility of irreparable injury to his interests in the property."

*Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 249–50 (quoting *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (internal quotation marks omitted)). Some courts also consider the "financial status of the debtor," *Miss Jones LLC*, 2019 WL 3034906, at *2, as well as "whether the interests of the plaintiff and others sought to be protected will in fact be served by receivership" when assessing the appropriateness of appointing a receiver, *Greystone Bank*, 2010 WL 11651639, at *2 (quotation marks omitted).

8

## II. Analysis

### A. Motion to Appoint Receiver

Plaintiff argues that appointment of a receiver is appropriate for several reasons. Plaintiff alleges that the Borrower failed to repay the Loan in full by the May 1, 2024 Maturity Date. (Pl.'s Mem., ECF No. 21-2, at 1; *see also* Reply, ECF No. 23, at 4 (representing that the default is a "maturity default").) Plaintiff argues that a receiver is warranted under the "express terms" of the Loan Documents and forbearance agreements, to which the Borrower consented. (Pl.'s Mem., ECF No. 21-2, at 1–2, 9.) Further, Plaintiff contends that the equitable considerations counsel in favor of receivership. (*Id.* at 2, 9.) According to Plaintiff, the Borrower's mismanagement of the properties has resulted in two judgments against the Property, as well as the accumulation of (1) approximately 103 New York City Department of Buildings ("DOB") violations since 2017, including "six Class 1 violations, which represent the highest level of building code infractions"; (2) about 24 New York City Environmental Control Board ("ECB") violations and judgments; (3) more than 120 New York City Department of Housing Preservation and Development ("HPD") violations since 2017; and (4) multiple citations by the New York City Fire Department ("FDNY") for fire code violations. (Pl.'s Mem., ECF No. 21-2, at 8–9; Trent Decl., ECF No. 21-3, ¶¶ 41–44, 46; DOB Violations, ECF No. 21-14; ECB Violations, ECF No. 21-15; HPD Violations, ECF No. 21-16; FDNY Violations, ECF No. 21-17; HPD & New York Workers' Compensation Board Judgments, ECF No. 21-18.) Plaintiff additionally alleges that the Borrower has failed to make payments on outstanding property taxes and insurance premiums, forcing Plaintiff to pay for those bills, and that the Borrower has not paid its invoices for heating oil. (Pl.'s Mem., ECF No. 21-2, at 7–9; Trent Decl., ECF No. 21-3, ¶ 45.)

9

Defendants, in brief, argue that Plaintiff is only entitled to a receiver under the Loan Documents "upon an event of default *that is continuing*," and that, "[b]ased upon the Transaction History which establishes regular or substantial payments made to date, the alleged default requires further examination." (Opp'n, ECF No. 22, at 11 (emphasis in original).) Defendants also state that the Borrower remitted rental income to Plaintiff and made regular payments towards the loan before and after the original May 1, 2024 Maturity Date, and that Plaintiff never made a demand for payment of the default interest or to cure any alleged violations. (*Id.* at 11–12, 22.) Defendants further argue that Plaintiff has not proven that the equitable considerations are in its favor, disputing whether Plaintiff showed a diminution in the value of the Property or whether irreparable harm may occur. (*Id.* at 13–14.) Finally, Defendants suggest that the Court can issue a less severe remedy than a receivership and that Plaintiff is "running up fees and costs that could be avoided." (*Id.* at 11, 14, 20–21.) Defendants also request a payoff statement "regarding the sums alleged due by the Plaintiff in connection with a refinance to close." (*Id.* at 16; *see* Reich Decl., ECF No. 25, ¶ 33.)

As noted above, the Loan Documents specifically provide for the appointment of a receiver if an Event of Default occurs. (*See* Trent Decl., ECF No. 21-3, ¶¶ 13, 29–32, 38; Mortgage Agreement, ECF No. 21-7, at ECF pp. 24–25.) Defendants have previously acknowledged, through the PNL, that the loan is in default, though Defendants currently dispute whether the default is "continuing." (*Compare* Pre-Negotiation Letter, ECF No. 21-10, at ECF pp. 5–6, *with* Opp'n, ECF No. 22, at 11.) Given that the Borrower failed to repay the Loan in full by the May 1, 2024 Maturity Date and by the February 1,

10

2025 date agreed upon by the parties in the Final Forbearance Agreement,[4] and there is no indication in the record that the Borrower has since fully repaid the loan, the Court finds that Plaintiff has provided sufficient evidence to conclude that the loan is in default. (*See, e.g.*, Trent Decl., ECF No. 21-3, ¶¶ 31–32; Reply, ECF No. 23, at 2.) Accordingly, the burden of persuading the Court that appointment of a receiver is improper rests with Defendants.[5] *See 204 Ellery St.*, 2024 WL 2939179, at *3 (collecting cases).

Each equitable factor will be addressed in turn.

1. *Fraudulent Conduct by Defendants*

Plaintiff does not allege that the Borrower engaged in fraudulent conduct. However, "evidence of fraud is not required for the appointment of receiver." *204 Ellery St.*, 2024 WL 2939179, at *3; *see also U.S. Bank Nat'l Ass'n as Trustee for Registered Holders of Wells Fargo Com. Mortg. Sec., Inc. v. 1078 Whillmore LLC*, 740 F. Supp. 3d 157, 177

---

[4] Defendants have represented that Plaintiff agreed to extend the May 1, 2024 Maturity Date to February 1, 2025. (Opp'n, ECF No. 22, at 12 n.4, 23.) Plaintiff disagrees, stating that it "never agreed to extend the maturity date but rather agreed to temporarily forbear from exercising its remedies until February 1, 2025." (Reply, ECF No. 23, at 3.) Even if the maturity date was extended to February 1, 2025, Defendants did not repay the loan in full by that date; this dispute therefore has no bearing on whether the Loan is in default. (*See id.* at 4.)

[5] Defendants have raised a great number of contentions, most of which have no relevance to the inquiry at issue here, which is whether a receivership is proper under the multi-factor equitable considerations test. *See 204 Ellery St.*, 2024 WL 3716031, at *3. More specifically, Defendants' arguments regarding whether the remittance of rental income, payments made before or after the Maturity Date, and Plaintiff's lack of demand for payment of the default interest or to cure any alleged violations has no bearing on the propriety of a receivership. (*See generally* Opp'n, ECF No. 22.) As discussed above, Defendants' default is one of maturity. (*See* Reply, ECF No. 23, at 4.) The loan was not fully repaid by the May 1, 2024 Maturity Date, and remains unpaid today; therefore, the Loan appears to be currently in default. (*See id.*; *see generally* Pre-Negotiation Letter, ECF No. 21-20.) Defendants' arguments regarding the financial history of the Property are unavailing in the context of evaluating whether Plaintiff has shown that a receiver is warranted. (*See* Opp'n, ECF No. 22, at 12–21; Reply, ECF No. 23, at 4.)

(E.D.N.Y. 2024) (appointing receiver despite no allegations of fraud). The lack of evidence of fraud does not provide a basis for denying relief; rather, this factor does not weigh for or against Plaintiff's motion.

　　2. *Imminent Danger to the Property and Inadequacy of Available Legal Remedies*

Factors two and three require the Court to examine any imminent danger to the property and whether the available legal remedies are adequate. *Fed. Nat'l Mortg. Ass'n v. 1488 Bushwick, LLC*, No. 23-CV-4030 (RPK) (TAM), 2024 WL 4728666, at *4 (E.D.N.Y. Nov. 8, 2024); *see also Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 250 (observing that "the existence of any imminent danger of the diminution of the value of the properties . . . is a critical factor in the analysis of whether to appoint a receiver"). Plaintiff has asserted that, in addition to two judgments entered against the Property, the Property has also accumulated approximately 103 DOB violations since 2017, around 24 violations and/or judgments issued by the ECB, more than 120 HPD violations since 2017, and multiple FDNY citations for fire code violations. (Pl.'s Mem., ECF No. 21-2, at 8–9; Trent Decl., ECF No. 21-3, ¶¶ 41–44, 46; DOB Violations, ECF No. 21-14; ECB Violations, ECF No. 21-15; HPD Violations, ECF No. 21-16; FDNY Violations, ECF No. 21-17; HPD & New York Workers' Compensation Board Judgments, ECF No. 21-18.) According to Plaintiff, these violations include, "among other issues, defective fire doors, missing signage, rodent and insect infestations (including mice and roaches), failure to remediate lead-based paint hazards, suspected gas leaks, sanitation violations, failure to install fireproof doors and windows, obstruction of exit passageways, and boiler deficiencies." (Pl.'s Mem., ECF No. 21-2, at 14; *see also* Trent Decl., ECF No. 21-3, ¶¶ 41–44.) Plaintiff argues that, without a receiver, additional violations are likely and would further diminish the value of the property, impairing Plaintiff's ability to recover. (Pl.'s Mem., ECF No. 21-2, at 13–14.)

12

Defendants do not dispute that the Property has accumulated a number of violations and judgments against it, though they argue that Defendants' property manager has responded to the "alleged Violations which have been remedied or are easily remedied."[6] (Opp'n, ECF No. 22, at 13; *see also* Reich Decl., ECF No. 25, ¶¶ 32, 35; Sarcone Decl., ECF No. 22-19, ¶¶ 8–9 (explaining issues with the boiler company); *id.* ¶¶ 10–19 (stating that the "ECB violations for municipal infractions are easily remedied," and that a number of the violations are outdated or have since been corrected).)

Plaintiff's concerns that Defendants will continue to endanger the Property are compelling, particularly given the number of violations from a myriad of government agencies, including but not limited to the FDNY. *See, e.g.*, *Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 254 (granting receivership where "[t]he near certainty of inexorable and substantial diminution in the [properties'] value has been established"); *1078 Whillmore LLC*, 740 F. Supp. 3d at 177–78 (finding danger to the property and the plaintiff's limited ability to recover supported receivership where the property was subject to two ECB judgments and six DOB violations); *1488 Bushwick, LLC*, 2024 WL 4728666, at *4 (finding 73 open HPD violations and 17 ECB judgments against the property supported receivership). And, while Defendants provide some explanation as to certain of the violations, not all violations are explained or confirmed to be resolved. (*See, e.g.*, Sarcone Decl., ECF No. 22-19, ¶ 14 (claiming some tenants do not allow access for "inspection

---

[6] Defendants also dispute whether the code violations can be considered events of default. (*See* Opp'n, ECF No. 22, at 13; Reich Decl., ECF No. 25, ¶ 32.) However, this argument is irrelevant — Plaintiff does not seek a receivership because the code violations constitute an event of default; the Event of Default at issue is one of maturity. (*See, e.g.*, Reply, ECF No. 23, at 4.) The relevant inquiry here is whether there is imminent danger to the Property; the code violations indicate that there is. *See 1078 Whillmore LLC*, 740 F. Supp. 3d at 177.

13

and addressing complaints"); *id.* ¶ 16 (describing FDNY violations as "old" without detailing resolution).) Further, the Court takes judicial notice that, as of the date this opinion was issued, the buildings currently have a combined 36 active violations listed on the DOB website, and a combined 144 open violations on the HPD website.[7]

In addition, given Plaintiff's representations regarding the need to pay the Borrower's property taxes and insurance,[8] it seems improbable that the Borrower will be able to reimburse Plaintiff for any resulting diminution in property value from the various violations, limiting Plaintiff's available legal remedies. (*See* Pl.'s Mem., ECF No. 21-2, at 13–14.) These factors weigh heavily in favor of granting Plaintiff's motion.

3. *Balance of Harms*

When the Borrower is a single-asset entity, whose sole asset is the property at issue, and the property is "the only vehicle for any meaningful recovery on the mortgage loans . . . it is critical that the value of the Propert[y] be maintained." *204 Ellery St.*, 2024 WL 2939179, at *4; *see also Sovereign Bank v. 347 East 173 LLC*, No. 11-CV-1061 (LBS), 2011 WL 2693525, at *3 (S.D.N.Y. June 29, 2011) (appointing a receiver where the "Borrowers' continued management will irreparably harm Plaintiff's interest in the Mortgaged Properties"). (*See* Pl.'s Mem., ECF No. 21-2, at 15.) Plaintiff alleges that the balance of the equities supports the appointment of a receiver, as Plaintiff is likely to be harmed by any further damage to the Property, and Defendants may benefit from "any

---

[7] The Court may take judicial notice of "documents retrieved from official government websites" or other government records from such sites. *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (collecting cases). Each property's violations are viewable on the DOB Now Self-Service Portal, https://a810-dobnow.nyc.gov/publish/Index.html#!/ (last accessed Oct. 1, 2025), and at HPD Online, https://hpdonline.nyc.gov/hpdonline/ (last accessed Oct. 1, 2025).

[8] Defendants have represented that they have advanced funds for taxes and insurance. (*See* Reich Decl., ECF No. 25, ¶ 34.)

14

residual value of the Property following satisfaction of Plaintiffs' mortgage lien." (Pl.'s Mem., ECF No. 21-2, at 15.) Defendants have alleged that harm would result from a receivership and accuse Plaintiff of "running up fees and costs that could be avoided." (Opp'n, ECF No. 22, at 11.) But, as Plaintiff notes, receivership costs would be "offset by eliminating the Borrower's existing $11,000 monthly management fee," and courts do not typically deny receivership solely because there are additional costs involved, as the balance of harms may still weigh in favor of receivership. (Reply, ECF No. 23, at 8–9.) *See also 1078 Whillmore, LLC*, 740 F. Supp. 3d at 178 (appointing a receiver where the "harm to the Plaintiff by denial of the motion for a receivership would be greater than any harm to the 1078 Whillmore Defendants").

Furthermore, the procedural history here shows that Plaintiff attempted to resolve this case before adjudication of this motion and delayed its effort to enforce its contractual right to receivership, to which Defendants previously agreed in forbearance letters and the PNL. (Pl.'s Mem., ECF No. 21-2, at 6–7; Pre-Negotiation Letter, ECF No. 21-10, at ECF pp. 5–6.) *See Kairos Credit Strategies Operating P'ship, LP v. Friars Nat'l Ass'n, Inc.*, 2023 WL 3675921, at *3 (S.D.N.Y. May 26, 2023) (finding a "significant diminution" of possible harm to Defendant "due to its voluntary accession to a receivership remedy in the bargaining process"). Beyond this, Defendants do not specifically identify any cognizable harm that would be caused by the appointment of a receiver, nor do they contend that they would be "deprived of any value or benefit" through receivership. *204 Ellery St.*, 2024 WL 2939179, at *4. The balance of harms therefore favors the imposition of a receiver.

    4. *Plaintiff's Probable Success*

On the basis of the present record, Plaintiff has shown it is highly likely to succeed in this foreclosure action. The Borrower has defaulted on the Loan, and the

15

Borrower has acknowledged and waived defenses as to its default in the PNL. (*See* Trent Decl., ECF No. 21-3, ¶¶ 21–33; Pre-Negotiation Letter, ECF No. 21-10, at ECF pp. 5–6.) While Defendants contest whether the default is "continuing," because the Loan was not repaid in full by the Maturity Date and currently remains unpaid, Plaintiff has proffered sufficient evidence to illustrate its "probable success in the action." *Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 250 (quotation marks omitted). (*See* Opp'n, ECF No. 22, at 11; Trent Decl., ECF No. 21-3, ¶¶ 31–32.) This factor thus weighs in favor of receivership.

     5. *Possibility of Irreparable Injury to the Plaintiff's Property Interests*

Given the totality of the circumstances, the record shows that Plaintiff's property interests may be further injured without the appointment of a receiver. As discussed above, Plaintiff has alleged that the Property is not being properly maintained and has submitted evidence of DOB, HPD, ECB, and FDNY violations, as well as evidence of the two judgments against the Property; the Court has also taken judicial notice of the numerous active DOB and HPD violations pending as to the Property on the DOB and HPD online databases. (*See* Pl.'s Mem., ECF No. 21-2, at 8–9; Trent Decl., ECF No. 21-3, ¶¶ 41–44, 46; DOB Violations, ECF No. 21-14; ECB Violations, ECF No. 21-15; HPD Violations, ECF No. 21-16; FDNY Violations, ECF No. 21-17; HPD & New York Workers' Compensation Board Judgments, ECF No. 21-18.) There is no reason for the Property to continue to degrade while foreclosure proceedings are pending.

In sum, given the explicit receivership provisions in the Loan Documents, the acknowledgment by Defendants in the PNL that the loan is in default, and the balance of equitable factors weighing in favor of receivership, the Court finds that appointment of a receiver is warranted. Plaintiff's motion to appoint a receiver is granted.

B. **Appointment of Trigild**

In its Motion, Plaintiff proposes Trigild, acting through one of its principals, Ian Lagowitz, as receiver. (Pl.'s Mem., ECF No. 21-2, at 16.) Plaintiff posits that Trigild, Mr. Lagowitz, and Trigild's proposed project team are well qualified to serve as receiver. (*Id.*; *see also* Lagowitz Decl., ECF No. 21-19 (providing Trigild's and Mr. Lagowitz's professional qualifications); Trigild's Qualifications, ECF No. 21-20; Trigild's Receiver & REO Management Assignments, ECF No. 21-21.) Plaintiff also represents that Trigild was appointed receiver in other recent cases brought by Plaintiff and has been performing well in that role. (Pl.'s Mem., ECF No. 21-2, at 17 (collecting cases in which Trigild was recently appointed receiver).) Defendants, while objecting to the general appointment of a receiver, have provided no specific objection to Trigild.

Trigild is a full-service fiduciary real estate company that has handled over 2,000 receivership appointments since 1988. (Lagowitz Decl., ECF No. 21-19, ¶ 3.) While Trigild does not have an office in New York City, Trigild currently serves as receiver or Real Estate Owned ("REO") property manager for many New York properties and has connections with several New York City-based real estate companies. (*Id.* ¶ 8; *see* Trigild's Qualifications, ECF No. 21-20; Trigild's Receiver & REO Management Assignments, ECF No. 21-21 (listing all New York state properties for which Trigild presently serves as receiver or REO property manager).) Mr. Lagowitz has 25 years of experience in real estate, and has been involved in almost 1,000 receivership, fiduciary, and trustee appointments. (Lagowitz Decl., ECF No. 21-19, ¶ 4.) His proposed project team is similarly experienced in acting in receivership roles. (*Id.* ¶ 5.)

The Court finds that Trigild is well qualified to serve as receiver. It is therefore appointed. *See 204 Ellery St.*, 2024 WL 2939179, at *4.

17

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to appoint a receiver is granted. Trigild, acting through its principal, Ian Lagowitz, is appointed receiver for the multi-family residential properties located at 23-05 30th Avenue, Astoria, New York 11102, 23-15 30th Avenue, Astoria, New York 11102, and 21-80 38th Street, Astoria, New York 11105, consistent with the attached order.

**SO ORDERED.**

Dated: Brooklyn, New York
      October 1, 2025

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE